573 F.2d 187
 Marion HAYWARD, Delores Grant, Nancy Little, Lawrence M.
Libater, J. Phillips Noble, Jr., and the City of
Charleston, Appellees,
v.
Cecil D. CLAY, Henry E. Hollinshead, Clifton D. Green, Jr.,
Malcolm C. Hursey, Hiram C. Adams, James H. Lee, Sr.,
Charles M. Lanford, Mary R. Miller, Alfred Williams,
Commissioners of the North Charleston Public Service
District, North Charleston Public Service District, and
Branford Heape, Appellants.
James B. EDWARDS, Governor of the State of South Carolina,
G. P. Callison, Ruben L. Gray, Zilla Hinton, Sylvia A.
McCullough, and Margaret Townsend, Members of the South
Carolina Election Commission, Donald Infinger, Robert
Lighthart, Jr., Solomon Morse, Jr., Helen Clawson, Curtis
Inabinett, Members of the Charleston County Election
Commission, Defendants,
v.
Joseph P. RILEY, Jr., Mayor of the City of Charleston, J.
Rutledge Young, Jr., Jerome Kinloch, Daniel L. Richardson,
Hilda Hutchinson Jefferson, Arthur W. Christopher, Brenda C.
Scott, Robert I. Ford, George A. Z. Johnson, Jr., Mary R.
Ader, James B. Moore, Jr., W. L. Stephens, Jr., and Henry E.
Grimball, Members of the City Council of the City of
Charleston, Third-Party Defendants.
 No. 77-2028.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 9, 1978.
Decided March 29, 1978.
 
 David G. Jennings, Charleston Heights, S. C. (Goodstein & Jennings, Charleston Heights, S. C., on brief), for appellants.
 Armand Derfner, Charleston, S. C. (Epstein, McClain & Derfner, William B. Regan, Corp. Counsel, Robert N. Rosen, Asst. Corp. Counsel, Charleston, S. C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and BUTZNER and HALL, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 The questions for decision are whether a South Carolina statute conditioning the holding of an annexation election upon a majority vote by the freeholders in the area to be annexed violates the fourteenth amendment to the United States Constitution, and whether the challenged portions of the statute are severable from the remainder. The district court found the challenged provisions unconstitutional and severable. We affirm.
 
 
 2
 * As one of several methods of annexation, the South Carolina Code provides that proceedings may be initiated by a petition signed by 15 percent of the freeholders in the area seeking to be annexed. S.C.Code § 5-3-160 (1976).[1] Upon certification of this petition by the governing council of the annexing municipality, a majority of the freeholders in the area proposed for annexation must, "(a)s a prerequisite to the annexation election . . . ," approve the change in a referendum. S.C.Code § 5-3-170 (1976). An effective annexation proceeding also requires approval by the registered voters in both the territory to be annexed and the annexing municipality. The freeholder referendum may precede or accompany the annexation election. In the latter instance, two voting boxes are maintained at the polling places in the area to be annexed; freeholders alone vote in one, and all registered voters, including freeholders, vote in the other. S.C.Code § 5-3-180 (1976).[2]
 
 
 3
 A freeholders' referendum and an annexation election were held simultaneously to determine whether the Garden Kiawah area should be annexed to the City of Charleston. The registered voters in the city and Garden Kiawah approved the annexation, but the freeholders of Garden Kiawah defeated it. The City of Charleston and voters from the city and Garden Kiawah (city) promptly filed suit against county officials and others (county), challenging the constitutionality of the freeholder referendum. Since all other statutory requirements for annexation had been fulfilled, the city sought an order validating the annexation.
 
 
 4
 On cross motions for summary judgment, the district court ruled that the freeholder referendum violated the equal protection clause of the fourteenth amendment. It held that annexation was a matter of the most pervasive public interest and that South Carolina promoted no compelling state interest by establishing a freeholder referendum that burdened the general franchise granted to South Carolina registered voters on annexation questions. The court also found that the portions of the statute referring to the freeholders' referendum were severable, that the remainder could stand intact, and that the annexation had been legally accomplished.
 
 II
 
 5
 In Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the Supreme Court held that a restriction of the vote in school district elections to owners and lessees of taxable realty and to parents and custodians of children enrolled in the public schools violated the equal protection clause of the fourteenth amendment. Limitations of the franchise to property taxpayers in municipal bond elections were struck down on the same grounds in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), and Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). In Hill v. Stone, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975), the Court declared unconstitutional a Texas statute allowing only those otherwise qualified voters who had registered taxable property to vote in municipal bond elections. In that case, 421 U.S. at 297, 95 S.Ct. at 1643, the Court summarized its holdings:
 
 
 6
 The basic principle expressed in these cases (Kramer, Cipriano, and Phoenix) is that as long as the election in question is not one of special interest, any classification restricting the franchise on grounds other than residence, age, and citizenship cannot stand unless the district or State can demonstrate that the classification serves a compelling state interest.
 
 
 7
 The county argues that the referendum, even when held simultaneously with an election, is not part of the election. It points out that the statute makes the freeholders' referendum a condition precedent to the actual election and that, consequently, the referendum does not burden the franchise in that election. While the referendum in form may be a condition precedent to the actual election, in effect it grants to some individuals who are identified on the basis of ownership of realty the right to nullify a vote for annexation by the electorate at large. Although the mechanics of the Texas "dual box election procedure" declared unconstitutional in Hill differ from South Carolina's, the wrongful grant of power to property owners is the same. The statutes of both states create property-based classifications of voters in an election of general interest and empower those with property to override the votes of those without. It is this restriction of the effective franchise to a property owning class not the mechanics of accomplishing the restrictions that offends the equal protection clause. See Hill v. Stone, 421 U.S. at 298, 95 S.Ct. 1637.
 
 
 8
 The county also relies on Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), which upheld a state annexation statute against a variety of constitutional challenges and characterized the state's power over municipal corporations as nearly absolute. But subsequent decisions have shown that the exercise of this power must conform to the Constitution, at least where voting is concerned. See Lockport v. Citizens for Community Action, 430 U.S. 259, 264-68, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977); Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); cf. Perkins v. Matthews, 400 U.S. 379, 388-90, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971). Of course, South Carolina need not grant anyone the right to vote on annexation; similarly, the plaintiffs in Hill, Kramer, Phoenix, and Cipriano could assert no federal constitutional right to vote on the matters at issue in those cases. But once the right to vote is established, the equal protection clause requires that, in matters of general interest to the community, restriction of the franchise on grounds other than age, citizenship, and residence can be tolerated only upon proof that it furthers a compelling state interest. Hill v. Stone, 421 U.S. at 297, 95 S.Ct. 1637.
 
 
 9
 The Supreme Court has distinguished elections of special interest from elections of general interest. Issues of special interest involve limited purposes which so disproportionately affect an identifiable group of voters that a state may restrict the franchise to them or give their votes special weight. Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 728, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) (water storage district).[3] In contrast, normal governmental functions present questions of general interest to which the requirement of an unrestricted electorate prescribed by Cipriano, Phoenix and Hill applies. See Hill v. Stone, 421 U.S. at 295-98, 95 S.Ct. 1637; Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. at 726-30, 93 S.Ct. 1224.
 
 
 10
 A change in the entire structure of local government is a matter of general interest. Annexation will affect municipal services that every citizen receives whether or not he is a freeholder. The district court found that this annexation "not only involves changes in taxation, police, and fire protection, sanitation, water, sewer and other public services, but brings about a complete change in the form of municipal government itself." Therefore, a property-based classification of voters is of no less constitutional significance in an annexation referendum than when the question is the issuance of municipal bonds or the details of operating a school system.
 
 
 11
 We agree with the district court that the county has not demonstrated that there are any differences in the impact of annexation on freeholders and non-freeholders which amount to a compelling state interest justifying an inequality in the franchise. The chief difference is the immediate and direct burden of property taxes. But the Supreme Court has held that this is an insufficient basis for restricting the franchise to property owners. Phoenix v. Kolodziejski, 399 U.S. at 210-11, 90 S.Ct. 1990; accord, Lockport v. Citizens for Community Action, 430 U.S. 259, 267-68, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977) (dicta; annexation).
 
 
 12
 The district court, relying primarily on Cothran v. West Dunklin Public School District, 189 S.C. 85, 200 S.E. 95 (1938), and Gordon v. Executive Committee of the Democratic Party, 335 F.Supp. 166 (D.S.C.1971), found that the unconstitutional portions of the South Carolina annexation statute were severable from the remainder, and it upheld the validity of the annexation election under the constitutional portions of the statute. We find no error in this interpretation of the South Carolina law of severability. Those portions of the statute requiring voters in the municipality and in the area to be annexed to approve the change are constitutional. Lockport v. Citizens for Community Action, 430 U.S. at 271-73, 97 S.Ct. 1047 (1977).
 
 
 13
 The judgment is affirmed.
 
 HAYNSWORTH, Chief Judge, dissenting:
 
 14
 For the reasons ably stated by Judge Butzner for the majority, I agree that this annexation procedure as applied is unconstitutional. I dissent, however, from the conclusion that the statutory provisions are severable and from the judgment upholding the election solely on the basis of the vote of the electors.
 
 
 15
 The legislature of South Carolina has shown an extraordinary concern for the interests of property owners in areas sought to be annexed by municipalities. The requirement of a petition by fifteen percent of the property owners in the annexed area as a pre-condition of any vote by electors or property owners is a clear and persuasive indication of it. The requirement that a majority of property owners vote in favor of the annexation provides a further conclusive indication of the legislature's desire to give property holders in the annexed area an effective veto over any annexation. Severing the property holder vote from the statute would completely undermine the intended operation of the statutory scheme. Indeed, it seems plain to me that the legislature was firmly of the opinion that what happened in this case should not be allowed to happen.
 
 
 16
 This annexation proceeding did not arise out of a movement by residents of the area sought to be annexed to have the area annexed by the City of Charleston. It began with the City of Charleston and arose out of its perceived need to annex a generally industrialized area with few residents in order to enhance the revenues of the City of Charleston without a comparable increase in its expenditures. The City first considered an attempt to annex a larger area, but cut off a portion of the area initially considered to enhance the probability that a vote of the relatively few residents of the remaining area would be cast in favor of the annexation. The vote of the electors residing in the City of Charleston was easily won, of course, because annexation of this generally industrial-commercial area would enlarge the public funds available for expenditure within the old limits of the City of Charleston.
 
 
 17
 While I agree that as applied the particular statutory scheme is unconstitutional, I would hold that a legal annexation was not effected by the vote, leaving further annexation proceedings to be had under any statute which may be enacted subsequently by the South Carolina Legislature.
 
 
 
 [1]
 In the 1962 Code, which was in effect when this action arose, these sections were numbered S.C.Code §§ 47-19.11 through 19.19 (1962)
 
 
 [2]
 Section 5-3-240 of the South Carolina Code, in defining a freeholder, includes corporations and tenants. At oral argument we were told that the law has been construed to allow a freeholder a vote for each piece of property he owns
 
 
 [3]
 The Supreme Court noted that the water storage district at issue in Salyer Land Co. did not exercise normal governmental authority. It did not have a fire department or police, and it provided no other general public services "ordinarily financed by a municipal body." 410 U.S. at 728-29, 93 S.Ct. at 1230