**Alfred MULLER, M.D.; Friendship Heights Village Council, Plaintiffs–Appellants,**

v.

**J. Joseph CURRAN, Jr., Attorney General; Montgomery County Council; Friendship Properties; The Barlow Corporation, Defendants–Appellees.**

No. 88–2896.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1989.

Decided Nov. 13, 1989.

Stephen McKenzie Truitt (Susan L. Launer, Daniel I. Prywes, Pepper, Hamilton & Scheetz, Washington, D.C., on brief), for appellants.

Ralph S. Tyler, Asst. Atty. Gen., Baltimore, Md., Angela Katherine Hart, Asst. County Atty., Rockville, Md., (J. Joseph Curran, Jr., Atty. Gen., Carolyn A. Quattrocki, Omar Melehy, Asst. Attys. Gen., Baltimore, Md., Clyde H. Sorrell, County Atty., John B. Walsh, Jr., Chen, Walsh & Tecler, Rockville, Md., on brief), for appellees.

Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge.

The questions presented in this appeal are whether a Maryland statute relating to incorporation of an unincorporated area violates the fourteenth amendment to the United States Constitution and, if so, whether the challenged portion of the statute should be severed, with the rest of the statute left intact.[1] Plaintiffs-appellants seek a declaratory judgment holding the offending section of the Maryland statute unconstitutional. However, they also maintain that the remainder of the statutory scheme should survive under principles of severability. The District Court rejected appellants' constitutional challenge and their quest for declaratory relief, and did not reach the severability issue.

### Equal Protection

■ Under Maryland law the only way in which an unincorporated area of three hundred or more residents can become a municipality is pursuant to the three-step process set forth in Md.Ann. Code art. 23A, §§ 20–30 (1981 Repl.Vol.). The first step requires a petition to the county council signed by at least 20% of the registered voters of the area to be incorporated and also by the owners of at least 25% of the assessed value of the real property within that area. The second step involves a decision by the county council, in its sole discretion, to submit the issue of incorporation to the voters of the area. The third step is

---

1. Appellants—plaintiffs below—are the Village Council in the area in Montgomery County, Maryland and also a registered voter in that area. The standing of the latter is not questioned. The standing of the Village Council, a Special Tax District in Montgomery County, is challenged on the grounds that it is not a natural person and has no right to vote. In view of the standing of one of the party plaintiffs, the issue of standing of the Village Council need not be reached by this Court. *Carey v. Population Services International*, 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977).

an election in which all registered voters in the area can vote.

In *Hayward v. Clay*, 573 F.2d 187 (4th Cir.), *cert. denied*, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 351 (1978), this Court held invalid a South Carolina statutory provision which provided a two-step process for annexation of an area: (1) a petition signed by 15% of the property owners in the area involved; (2) the favorable vote of a majority of such property owners and also of the majority of the registered voters in both the annexed and the annexing areas. Noting that "South Carolina need not grant anyone the right to vote on annexation," Judge Butzner wrote that "once the right to vote is established, the equal protection clause [of the fourteenth amendment] requires that, in matters of general interest to the community, restriction of the franchise on grounds other than age, citizenship and residence can be tolerated only upon proof that it furthers a compelling state interest." *Id.* at 190. Judge Butzner held that "[a] change in the entire structure of local government is a matter of general interest," *id.*, and that "while the referendum [of the property owners] in form may be a condition precedent to the actual election, in effect it grants to some individuals—who are identified on the basis of ownership of realty—the right to nullify a vote for annexation by the electorate at large." *Id.* at 189. Judge Butzner concluded that the equal protection clause was offended, relying upon *Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975), and noting that although the "mechanics" of the Texas procedure held unconstitutional in *Hill* differed from the procedure challenged in *Hayward*, it is the "restriction of the effective franchise to a property owning class—not the mechanics of accomplishing the restrictions—that offends the equal protection clause." 573 F.2d at 190. A result similar to that in *Hayward* was reached in *City of Seattle v. State*, 103 Wash.2d 663, 694 P.2d 641 (1985) (citing with favor to *Hayward* and to *Curtis v. Board of Supervisors of Los Angeles County*, 7 Cal.3d 942, 104 Cal.Rptr. 297, 501 P.2d 537 (1972)).

In *Berry v. Bourne*, 588 F.2d 422 (4th Cir.1978), the Fourth Circuit distinguished *Hayward* in dealing with another South Carolina annexation provision. The statutory procedure challenged in *Berry* authorized the governing body of the annexing area to annex upon the filing of a petition signed by 75% of the property holders in the area to be annexed. Judge Russell, in upholding the challenged statutory provision, wrote: "[T]he important fact is that the action of the freeholders in signing the request for annexation does not authorize annexation. Annexation depends wholly on the favorable vote of the governing body of the annexing city. This is the crucial action and on that neither freeholders nor electors as such have a vote. Since the electors of the municipality of the area to be annexed are not given the right to vote under the challenged statute, the application of the statute poses no equal protection issue." *Id.* at 424. Judge Russell also wrote: "Clearly, if the statute before us had provided that annexation required the favorable vote of the freeholders of the area to be annexed and made no provision for voting by the electors of that area, the statute would be condemned as violative of the equal protection clause. However, that is not the procedure under the statute under review. There is, we repeat, no election either for freeholders or electors and *Hayward* [sic] is not in point." *Id.* at 425. Finally, Judge Russell stated that the challenged procedure "involves no election; in fact, it is a procedure which does not contemplate an election." *Id.*

In the instant case, an election is involved, thus presenting a different question than that in *Berry*. Under the procedure attacked herein, no popular vote is taken unless the county council, in its sole discretion, authorizes the election. However, a vote by the county council can be entirely blocked if the owners of at least 25% of the assessed value of the real property within the area to be incorporated fail to petition in favor of incorporation. Because in no event can any vote take place unless the county council exercises its discretion in favor of permitting a vote, the district court concluded that this case is closer to *Berry* than to *Hayward*. We cannot agree. The challenged Maryland procedure permits a popular vote to be

blocked by property owners. That is so because the county council cannot schedule such a vote unless a given percentage of the property owners authorize it. That in and by itself offends equal protection principles unless a compelling state interest is present. No such interest has been shown in this case.

### Severability

In *Hayward,* the majority of the panel held severable certain remaining provisions of the South Carolina statute. 573 F.2d 190–91. Subsequently, the Supreme Court of South Carolina held to the contrary. *Fairway Ford, Inc. v. Timmons,* 281 S.C. 57, 314 S.E.2d 322, 324 (1984).

■ State law—herein, the law of Maryland—governs determination of severability of a state statute. *See Exxon Corp. v. Hunt,* 475 U.S. 355, 376, 106 S.Ct. 1103, 1116, 89 L.Ed.2d 364 (1986); *Environmental Encapsulating Corp. v. New York City,* 855 F.2d 48, 60 (2d Cir.1988). Under Maryland law, "[t]he primary focus" is directed toward "legislative intent," that is, "what would have been the intent of the legislative body, if it had known that the statute could be only partially effective." *Turner v. State,* 299 Md. 565, 576, 474 A.2d 1297, 1302 (1984).

■ There is a presumption in favor of severability under Maryland law [2] and there is a general severability provision in Md.Ann. Code art. 1, § 23 (1987 Repl.Vol.) which applies to all statutes enacted after July 1, 1973. There is also a severability provision in Md.Ann. Code art. 23A, § 5 (1987 Repl.Vol.), enacted in 1951, which applies only to provisions of Article 23A.[3] Once the statutory provision requiring a petition to be signed by the owners of at least 25% of the assessed value of the real property within the area to be incorporated is stricken, nonnatural, including corporate, property owners would play no controlling part in the issue of incorporation. Maryland's legislature did not intend such a result. The original Senate bill, which now appears within Article 23A,[4] did not contain any role for property owners, provided that 10% of the registered voters of the area could commence the process, and required the county council to submit the issue of incorporation to the voters of the area. As enacted, the legislation changed that 10% to 20%, added the need for a petition by the owners of 25% of the assessed value of the real property and thus a sharing of control by voters and property owners, and also left it to the discretion of the county council whether or not to submit the matter to the voters. In that context, this Court cannot conclude that Maryland's legislature intended that if the property owners' vote were to be eliminated as unconstitutional, the legislature desired the statute to survive with no controlling participation by the property owners. Accordingly, we hold that the Maryland statutory scheme under review herein, providing for a three-step process for incorporation, may not survive with the elimination of the challenged 25% property owner petition provision.

The judgment below is reversed and the case is remanded for the entry of an appropriate decree in conformance with this opinion.

REVERSED AND REMANDED.

---

**2.** *Ocean City Taxpayers v. Mayor & City Council,* 280 Md. 585, 600, 375 A.2d 541, 550 (1977); *Comptroller v. Armco, Inc.,* 70 Md.App. 403, 415–17, 521 A.2d 785, 791 (1987).

**3.** Md.Ann. Code art. 1, § 23 provides:
  The provisions of all statutes enacted after July 1, 1973 are severable unless the statute specifically provides that its provisions are not severable. The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent.
  Md.Ann. Code art. 23A, § 5 provides:
  If any provision of this article, or the applicability thereof to any person or circumstances, is held invalid, the remainder of this article and the applicability thereof to other persons and circumstances shall not be affected thereby.

**4.** Enacted in Chapter 423 of the Acts of 1955.