**William H. MURRAY, J. Neil Lewis, John Corcoran, and Robert L. Miller, Plaintiffs,**

v.

**Robert KAPLE, Franklin McCray, J.W. Kramer, and Waccamaw Neck Civic Association, Defendants.**

No. Civ.A. 2:99–2523–23.

United States District Court, D. South Carolina, Charleston Division.

Sept. 24, 1999.

---

Robert J. Moran, Jr., Murrells Inlet, SC, for plaintiffs.

David J. Gundling, Gundling & Kelaher, P.A., Pawleys Island, SC, Susan L. Moody, Office of Secretary of State, Columbia, SC, for defendants.

## ORDER

DUFFY, District Judge.

This matter, in which the plaintiffs seek a declaration of the constitutionality of an upcoming municipal election, is before the court upon defendants' motions to dismiss, and cross-motions for summary judgment. For the foregoing reasons, the defendants' motions to dismiss are denied, and the plaintiffs' motion for summary judgment is granted. Defendants' motions for summary judgment are denied. The challenged state statute is unconstitutional on its face as a violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

Plaintiffs, in their complaint filed July 29, 1999, allege that section 5–1–40 of South Carolina's municipal incorporation statutes is unconstitutional. Specifically, plaintiffs attack the constitutionality of the statute on the basis that it requires a petition containing the signatures of fifteen percent (15%) of the freeholders residing within the proposed area of incorporation, and as such is violative of the guarantee of Equal Protection of the Fourteenth Amendment.[1] Plaintiffs seek the following forms of relief: (1) a temporary and permanent injunction enjoining defendants from conducting the proposed election, and from participating in any conduct in preparation thereof; (2) a declaration that the South Carolina municipal incorporation statutory scheme is unconstitutional; or in the alternative, (3) an ordered delay in conducting the proposed election so that the South Carolina General Assembly can pass an alternative municipal incorporation statute.[2] Plaintiffs have moved for sum-

---

1. In their complaint, plaintiffs also allege causes of action for violations of the Voting Rights Act; the municipal incorporation statutes, S.C.Code Ann. §§ 5–1–10 to 5–1–110 (Law.Coop.1977 & Supp.1998); and the "One-man, one-vote rule." At the hearing held on September, 23, 1999, all parties agreed to restrict resolution of this case to the constitutional challenge. Therefore, this Order will only consider the constitutional valid-

ity of the South Carolina municipal incorporation scheme, as that issue is dispositive.

2. On January 12, 1999, the South Carolina Senate introduced a bill offering a proposed amendment to the municipal incorporation statutes which would alter the challenged petition requirements. Senate Bill No. 226 requires only that fifteen (15) percent of the qualified electors petition for incorporation, rather than fifteen (15%) percent of the free-

mary judgment on the constitutional issue. Defendants have moved to dismiss all causes of actions on the ground that the suit is untimely and not ripe for adjudication, and have also filed similar motions for summary judgment on the constitutional ground. This Order will first address the summary judgment arguments, as their resolution, or at least, explanation, is germane to the grounds for the motion to dismiss.

## I. BACKGROUND

This action concerns a municipal incorporation effort for a proposed area within Georgetown County known as the Waccamaw Neck (hereinafter "Pawley's Mainland"). Plaintiffs, three freeholders and one non-freeholder, oppose the proposed incorporation based upon their belief that the new municipality will create a white enclave within Georgetown County consisting of a population that is ninety percent (90%) white and ten percent (10%) black. They also claim that the freeholder petition requirement excludes the African-American population in Georgetown County from the proposed incorporation allowing a small percentage of non–African–Americans to block the incorporation process.[3]

Defendant Waccamaw Neck Civic Association initiated the statutorily defined process to incorporate Pawley's Mainland. The incorporation statute basically sets forth a three-step process for this endeavor. First, after the Office of the South Carolina Secretary of State determines the proposed area meets or is exempted from certain population and boundary requirements, representatives for the incorporation effort must submit a feasibility study to the Secretary of State for approval. S.C.Code Ann. § 5–1–30. Second, a petition setting forth the corporate limits and number of inhabitants of the affected

area, and signed by fifty (50) qualified electors and fifteen percent (15%) of the freeholders residing within the proposed area must be filed with the Secretary of State. Id. § 5–1–40. Third, after approving the feasibility study and petition, the Secretary of State must commission three or more persons to conduct an election in which all registered voters of the proposed area are allowed to vote on the question of incorporation, as well as other municipal issues. Id. § 5–1–50. While the freeholders' signatures are required for the petition process, the general election allows all qualified voters, regardless of property ownership status, to participate in voting on this issue of incorporation. If the results of the general election are in favor of incorporation, the Secretary of State then issues a certificate of incorporation to the newly created municipality. Id. § 5–1–70. The statute also specifically provides a mechanism for challenging the process, and states that any suit challenging the incorporation procedures shall be brought within sixty (60) days after the issuance of the certificate of incorporation. Id. § 5–1–110.

In the case at hand, Defendant Waccamaw Neck Civic Association completed the prerequisite requirements of the incorporation process for Pawley's Mainland, including the submission of a feasibility study and petition signed by more than fifty (50) qualified electors and fifteen percent (15%) of the freeholders of the proposed area. Upon approving these two items, the Secretary of State issued a certificate on July 7, 1999, commissioning Defendants Kaple, McCray and Kramer to hold and conduct a general election for all qualified voters of the proposed area to decide the issue of incorporation of Pawley's Mainland. Pursuant to section 5–1–50, this election must be held within ninety

---

holders. The Bill passed in the Senate, and at the time of this Order, had traveled through the Judiciary Committee of the House of Representatives, but had been carried over until the next session.

**3.** The court interprets this allegation as expressing concern that non-freeholders have no input in the initiation, boundaries, and make-up of the proposed municipality, resulting in total control over the incorporation process by freeholders.

(90) days of the issuance of the commissions and is currently scheduled for October 5, 1999.

## II. MOTIONS FOR SUMMARY JUDGMENT

Both the plaintiffs' and the defendants' motions for summary judgment are grounded on differing interpretations of the same case law—that of Equal Protection and freeholder restrictions on the right to vote. Plaintiffs argue that the South Carolina incorporation statute is unconstitutional on its face, and seek a permanent injunction. Defendants disagree. Summary judgment is appropriate when the pleadings, depositions, interrogatory answers, admissions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The court concludes that under controlling precedent the incorporation procedure violates the Equal Protection clause of the Fourteenth Amendment as a matter of law.

### Equal Protection

■■■ To allege a *prima facie* Equal Protection violation, it is enough that a plaintiff complains of governmental treatment dissimilar to that received by others similarly situated. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 953 (4th Cir.1992) (as amended). The Equal Protection Clause of the Fourteenth Amendment is not a source of substantive rights or liberties, but is a right to be free from invidious discrimination in statutory classifications and other governmental activity. *Harris v. McRae*, 448 U.S. 297, 321, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The Supreme Court has recognized, however, the right to vote in state elections as an exception to this rule. *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). It is well settled that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction. *Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). "Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government," and as such must be carefully and meticulously scrutinized. *Kramer v. Union Free School District*, 395 U.S. 621, 626, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). *See also Evans v. Cornman*, 398 U.S. 419, 422–23, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) (invalidating state denial of right to vote to residents of federal enclave); *Kramer*, 395 U.S. at 633, 89 S.Ct. 1886 (invalidating state limitation on suffrage in local school elections to property owners); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (invalidating state preclusion of non-residents' vote on the issuance of revenue bonds).

Both the Fourth Circuit Court of Appeals and the South Carolina Supreme Court have addressed the issue of freeholder provisions in the election process. The case of *Hayward v. Clay*, 573 F.2d 187 (4th Cir.1978), arose out of an annexation election in which the City of Charleston attempted to annex the area known at that time as Garden Kiawah. Pursuant to the statutory provisions, a dual annexation election was held—a general election in which the registered voters in the City and Garden Kiawah voted, and a referendum vote only by Garden Kiawah freeholders. The city and Garden Kiawah approved the annexation, but the Garden City freeholders voted against it. The court held that the statute conditioning the holding of an annexation election upon a majority vote by the freeholders in the area to be annexed violated the Fourteenth Amendment.

In *Hayward*, the annexation statute provided that the annexation proceeding be initiated by a petition signed by fifteen (15%) of the freeholders in the area to be annexed. *Id.* at 187. Upon certification of this petition by the governing council of the annexing municipality, the freeholders then voted in a referendum election separate and distinct from the popular annexation election which was open to all regis-

tered voters. The statute required that a majority of the freeholders approve the annexation as a "prerequisite" to any annexation election. *Id.* at 188. This procedure gave the freeholders the ability to nullify the annexation in that they could vote it down in the separate freeholder referendum.

The defendants made a failed argument that the freeholder referendum was not part of the actual general election, and as a condition precedent, did not burden the franchise. *Id.* at 189. However, the court flatly rejected that technical distinction, and stressed that the statute gave the freeholders a "veto" power over the non-freeholders. The court deemed this "veto power" to be an unconstitutional infringement on the right to vote of the affected residents. *Id.* at 189. "It is this restriction [the 'veto power'] of the effective franchise to a property owning class not the mechanics of accomplishing the restrictions that offends the equal protection clause." *Id.* The court then proceeded to find, with only brief discussion, that the freeholder provisions were severable from the statute, and upheld the annexation.

■ In this case at bar, the defendants argue that the incorporation statute provides for only one general election, and does not give the freeholders any greater voting power. Additionally, they find support in the fact that the court in *Hayward* did not expressly strike down that portion of the annexation statute which required a petition signed by fifteen percent (15%) of the freeholders to start the annexation process—a petition requirement identical to the incorporation statute. While on its face the incorporation statute at bar does not grant a veto-type vote to the freeholders, any substantial distinction between the freeholder vote and a freeholder pre-vote petition is diminished by the later case of *Muller v. Curran,* 889 F.2d 54 (4th Cir.1989.).

In *Muller v. Curran,* 889 F.2d 54, the Fourth Circuit Court of Appeals considered and interpreted the municipal incorporation statute of the State of Maryland.

The Maryland statute set forth a similar three-step procedure for incorporating a municipality: (1) *submission of a petition* to the county council *signed by* at least twenty (20%) of the registered voters and *owners of at least twenty-five (25%) of the assessed value of real property* within the proposed area; (2) a decision by the county council, in its sole discretion, to submit the issue of incorporation to a vote; and (3) a general election in which all registered voters could vote on the question on incorporation. *Id.* at 55 (emphasis added). In this scenario, either the voter, property owner, or county council had the power to block the general election, even though no popular vote was taken unless ultimately authorized by county council. The court held that the requirement that property owners petition for incorporation permits a popular vote to be blocked by property owners. *Id.* at 56. "That is so because the county council cannot schedule such a vote unless a given percentage of property owners authorize it." *Id.* Therefore, in accord with *Hayward,* the court declared such a procedure a violation of Equal Protection principles, and noted that Maryland had failed to present any compelling state interest to justify such an infringement. The court also applied Maryland law to determine that the statute was not severable. *Id.* at 56–57.

The South Carolina Supreme Court addressed the same annexation process as was confronted in *Hayward* in *Fairway Ford, Inc. v. Timmons,* 281 S.C. 57, 314 S.E.2d 322 (1984). In that case, in an attempt to cure the constitutional defect of the freeholder provisions, the City of Greenville and its Election Commission purposely omitted the separate freeholder referendum from the annexation election process. The annexation at issue was approved by a majority vote of the eligible voters in both the annexing city and the area to be annexed. No freeholder election was held. However, suit was brought to determine whether or not the annexation statute was operable without that unconstitutional portion. *Id.* at 324. Expressly

rejecting the severability decision in *Hayward* as unsupported by South Carolina law, the court looked to the legislative intent, held that the freeholder election provision was not severable, and invalidated the entire annexation statutory scheme. *Id.* at 324.

Application of *Muller*'s reasoning to the case at bar directs this court to declare that the South Carolina incorporation statute at issue is unconstitutional on its face. While thoughtful, the attempts to distinguish *Muller* from the present facts fail to circumvent the ultimate conclusion of that case—that any provision which furnishes a mechanism with which to block a vote impinges the guarantee of Equal Protection under the Fourteenth Amendment. Defendants make mention of the fact that the State of Maryland delegated its authority over the incorporation process to local entities, and that somehow South Carolina's retention of the power to commission the election upon approval of the feasibility study and petition makes some constitutional difference. There is no indication, however, that the Secretary of State would commission an election without the requisite percent of freeholder approval. To the contrary, the provisions setting forth the petition requirements and the Secretary's actions following receipt of the petition are phrased in mandatory language. "[T]he citizens ... desiring to be incorporated, *shall* file with the Secretary of State their petition ... setting out their corporate limits ... and signed by ... fifteen percent of the freeholders." S.C.Code Ann. § 5–1–40. "After receipt of such petition, the Secretary of State *shall* then issue to three or more persons ... a commission." *Id.* § 5–1–50. (emphases added). The defendants also attempt to differentiate the Maryland statute's use of a percentage of an "assessed value of property," reasoning that in that case, not even the freeholder votes are equal. However, not in this case, nor in any of the cases cited, did the Equal Protection issue concern differing treatment of large and small landowners. Any such distinction is irrelevant.

Here, the justiciability issue rears its head. In the case at bar, the freeholders did not block the election, but signed the petition in sufficient numbers for the process to continue. Before considering any justiciability issue, the court will first address the severability of the statute as found partially void.

### Severability

■ State law—here, South Carolina law—governs the severability of a state statute. *Muller,* 889 F.2d at 57; *see Timmons,* 281 S.C. at 59, 314 S.E.2d 322. In South Carolina, the test for severability is to determine whether or not the Legislature would have passed the residue independently of that which is void.

> [W]here part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such character as that it may fairly be presumed that the Legislature would have passed it independently of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder.

*Townsend v. Richland County,* 190 S.C. 270, 2 S.E.2d 777, 781 (1939). *See Thomas v. Cooper River Park,* 322 S.C. 32, 471 S.E.2d 170, 171 (1996); *Thayer v. South Carolina Tax Comm'n,* 307 S.C. 6, 413 S.E.2d 810 (1992).

■ In *Timmons,* as noted above, the South Carolina Supreme Court expressly rejected the Fourth Circuit's severability interpretation of the freeholder provisions in the annexation statute, and concluded that those unconstitutional portions were not severable from the annexation scheme. The court deducted that the eight methods in the annexation statute all requiring approval of freeholders constituted evidence that the intent to require freeholder approval was so dominant that it could not be said that the statute would have been enacted without the freeholder approval requirement. *Id.* at 324. While the incorporation statute at bar differs from the an-

nexation statute in *Timmons*, the similar category into which those two municipal processes fall provides support that the Legislature would have possessed a similar intent. Additionally, if the freeholder petition requirement were to be severed from the section 5–1–40, the only requirement remaining would be that at least fifty (50) qualified electors sign the petition. This result does not comport with the common sense intention to assure a certain number of interested persons' desire for an incorporation vote. Furthermore, a proposed amendment to section 5–1–40, which as of June of this year had been passed by the South Carolina Senate, and had been positively received by the Judiciary Committee of the South Carolina House of Representatives contains a different petition requirement. *See* S.622 (113th Sess.) (S.C. June 2, 1999). Bill 622 alters the petition provision to require that the petition be signed by fifteen percent (15%) of qualified electors. All of these considerations lead the court to conclude that the Legislature would not have passed the petition provision without the freeholder condition. Therefore, the statute is not severable.

### III. MOTION TO DISMISS

Defendants have also moved to dismiss on the ground that there is no "case or controversy" within the meaning of Article III, § 2, of the United States Constitution. They argue that the plaintiffs' case is not ripe for adjudication. In determining if a case is ripe for review, the courts must consider "whether a substantial controversy exists, between parties having adverse legal interests, of sufficient immediacy and reality to warrant adjudication." *Thrifty Rent–A–Car Systems, Inc. v. Thrifty Auto Sales of Charleston, Inc.,* 849 F.Supp. 1083, 1086 (D.S.C.1991). The United States Supreme Court has stated that its determination whether a case is ripe focuses on two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *see Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). "The Supreme Court has typically found hardship when enforcement of a statute or regulation is inevitable and the sole impediment to ripeness is simply a delay before the proceedings commence." *Kardules v. City of Columbus,* 95 F.3d 1335, 1344 (6th Cir.1996).

In *Kardules v. City of Columbus,* 95 F.3d 1335 (6th Cir.1996), citizens brought an action against a city and city officials claiming that their right to vote on a ballot issue concerning a proposed merger of a village and an unincorporated portion of the township had been impaired by certain contracts between the city and the village. These contracts would result in large utility rate increases upon a vote in favor of the merger. One of the arguments rejected by the court was that no hardship could occur until the merger was actually approved by the voters. *Id.* at 1344. The court held that the threat of economic hardship used to skew the electorate's decision on the merger was the harm suffered, and that as such that harm occurred prior to the actual vote. *Id.*

The case at bar is similar in that the plaintiffs do not claim harm from the incorporation vote for Pawley's Mainland, but from the use of and procedure set forth in the South Carolina incorporation statute. Upon use of the incorporation procedure challenged, defendants have already set in motion the incorporation process harmful to the plaintiffs' right to vote. With the signatures of less than one - hundred electors and fifteen percent (15%) of the freeholders, the statute allowed the defendants to begin the process of incorporation, leaving non-freeholders less of an opportunity to oppose the process. Defendants argue that the election has yet to occur, and that there is no guarantee that the incorporation effort will be successful. However, "[w]here the inevitability of the operation of a statute against certain indi-

viduals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come, into effect." *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 139–45, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The plaintiffs are challenging the prerequisite requirements for the authorization of an, incorporation election. This event has already occurred, and regardless of the result, delaying the determination on the identical issue until after the election does not serve to further any purpose, other than delay for the sake of delay. The situation in which such a controversy would not be ripe would be where the plaintiffs filed suit prior to the defendants initiation of the incorporation process. For example, had the plaintiffs filed suit prior the petition's compliance with the statutory requirements, a challenge to those requirements would be untimely.

In support of their argument that this case is not ripe, the defendants propose two ways in which this controversy would become justiciable: first, if a group of non-freeholders had fulfilled all the statutory requirements of the incorporation process, but were denied the ability to hold a general election because they were unable to obtain the required signatures of fifteen percent (15%) of the freeholders; and secondly, if the voters of the proposed area had proceeded to an election and voted on the status of Pawley's Mainland. The first contingency is too narrow in that it only reveals one weakness in the freeholder portion of the statute by failing to recognize the harm already incurred in the origination of the petition for incorporation. It is there where the non-freeholders are burdened. Defendant's second contingency proves postponing adjudication until after the election for the sake of the election serves only to promote delay.

### IV. CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons that the plaintiffs' motion for summary judgment is **GRANTED.** Defendants' motions to dismiss and for summary judgment are **DENIED.** Accordingly, the court declares that the incorporation procedure prescribed under section 5–1–40 of the South Carolina Code violates the Equal Protection clause of the United States Constitution and permanently enjoins the defendants from employing that statutory procedure, conducting the proposed election, and from participating in any conduct in preparation thereof.

**AND IT IS SO ORDERED.**