Filed:  September 12, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 01-1185(L)
(CA-00-182-7-3-BO)

Ovalee Barefoot, et al.,

                              Plaintiffs - Appellants,

        versus

City of Wilmington, North Carolina,

                              Defendant - Appellee.

O R D E R

        The court grants Appellee's motion to publish and amends its opinion filed June 10, 2002, as follows:

        On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

        On page 6, section 4 -- the section is changed to begin "Affirmed by published opinion...."

        On page 6 -- the reference to the use of unpublished opinions as precedent is deleted.

Entered at the direction of Judge Gregory, with the concurrence of Judge Wilkins and Judge Luttig.

For the Court

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

OVALEE BAREFOOT; GEORGE WRAGE;
SHARON ALLEN; NICHOLAS FOKAKIS;
ALGERON LEE BUTLER, JR.; SUSAN
DEIBERT BUTLER; JOHN ELLIS
BRYANT; SHERRY WILLIAMS BRYANT;
THEODORE HERRING HEWLETT, SR.;
ANN JOYCE HEWLETT; WILLIAM
ADDISON HURST; LILLIAN WILLIAMSON
HURST; MILES CREAMER HIGGINS;
MARGARET GLENDY WILLIARD
HIGGINS; MILES CREAMER HIGGINS,
III; COLLEEN MITHCEL HIGGINS;
JANET MOORE HICKS; JOHN RUSSELL
HICKS; CAROLYN TIMMS HICKS;
ALBERT EMERSON WILLARD;
ELIZABETH WHITE WILLARD; MARTIN          No. 01-1185
  STEVENSON WILLARD; GABRIELLE
HOLMES WILLARD; RICHARD BENTLEY
WALDKIRCH; CAROL WELCH
WALDKIRCH; SALLY HICKS REARDON;
WILLIAM MARTIN WILLARD; THOMAS
LEO JOYCE; SUZANNE SPENCE JOYCE;
JOHN JAMES ORMOND; DAVID LEWIS
ORMOND; MARY CAIN ORMOND;
CLAUDE HUNTLEY MCALLISTER, JR.;
NANCY HARDACRE MCALLISTER;
KEVIN SLEAN SCULLY; MADELINE
MARGURITE SCULLY; HARRIETT
RIEMAN; JACK A. ALFORD; ALLAN L.
ANTES; JANE L. ANTES; JOSEPH F.
AUGUSTINE; CAROLYN R. AUGUSTINE;

ROBERT C. BOWEN, SR.; MARY L. BOWEN; JULIAN H. BRADBERRY, JR.; MARY A. BRADBERRY; VANDER M. CLEMMONS; GLORIA R. DEGNAN; MURRAY J. DEGNAN; GEORGE DITCHEOS; BARBARA DITCHEOS; ROBERT L. DOWNING; HENRY P. DOZIER; FRANCES M. DOZIER; GARY D. GALLOWAY; JENNIE GALLOWAY; GREGORY V. GIAMMALVO; GLORIA J. GIAMMALVO; WILLIAM B. HAVERTY; EDNA B. HAVERTY; KEVIN J. HOBAN; MICHELLE HOBAN; CHARLES E. HORTON; WILLIAM S. HOWELL; MOLLY HOWELL; FLOYD P. KIRBY; LINDA N. KIRBY; CLIFF C. MABRY, JR.; MARTY MABRY; C. ROY MALLOTT; RICHARD H. MARSTON, JR.; JOAN P. MARSTON; HUGH ALEXANDER MCEACHERN, JR.; MARY MCEACHERN; JOHN V. METTS; SUSAN METTS; RICHARD L. PENNINGTON; BESSIE G. PENNINGTON; KARL O. PIERCE; JUDY PIERCE; JOEL T. PINER; H. VAN REID; DOROTHY B. REID; JAMES W. ROUSE, JR.; JANIS M. ROUSE; PHILLIP A. SCARRELL; MONA R. SMALLEY; KENNETH SMITH; PAULA SMITH; EDWIN E. SPENCER; MONICA R. SPENCER; HOWARD J. TALLEY; BETSEY TALLEY; GUSTAVE J. VAN NYNATTEN; JOANNA P. VAN NYNATTEN; RICHARD L. WOODBURY; SUZANNE M. WOODBURY; BARBARA E'EMELIO;

2

HERCHEL E. ROGERS; JULIA P.
ROGERS; JOHN C. BYRNES, III;
MARGARET J. BYRNES; ROBERT E.
DOYLE; JAMES RAYBURN; SARAH
RAYBURN; CATHERINE C. TAMISIEA;
DANIEL J. FILOMENA; CATHERINE
FILOMENA; KIRK A. HOWARD;
BARBARA A. HOWARD, J. DON
BULLARD; FAYDENE S. CORBETT,
     *Plaintiffs-Appellants,*

     v.

CITY OF WILMINGTON, NORTH
CAROLINA,
     *Defendant-Appellee,*

STATE OF NORTH CAROLINA,
     *Intervenor-Appellee.*


OVALEE BAREFOOT; GEORGE WRAGE;
SHARON ALLEN; NICHOLAS FOKAKIS;
ALGERON LEE BUTLER, JR.; SUSAN
DEIBERT BUTLER; JOHN ELLIS
BRYANT; SHERRY WILLIAMS BRYANT;
THEODORE HERRING HEWLETT, SR.;
ANN JOYCE HEWLETT; WILLIAM
ADDISON HURST; LILLIAN WILLIAMSON      No. 01-2191
  HURST; MILES CREAMER HIGGINS;
MARGARET GLENDY WILLIARD
HIGGINS; MILES CREAMER HIGGINS,
III; COLLEEN MITHCEL HIGGINS;
JANET MOORE HICKS; JOHN RUSSELL
HICKS; CAROLYN TIMMS HICKS;
ALBERT EMERSON WILLARD;

3

ELIZABETH WHITE WILLARD; MARTIN STEVENSON WILLARD; GABRIELLE HOLMES WILLARD; RICHARD BENTLEY WALDKIRCH; CAROL WELCH WALDKIRCH; SALLY HICKS REARDON; WILLIAM MARTIN WILLARD; THOMAS LEO JOYCE; SUZANNE SPENCE JOYCE; JOHN JAMES ORMOND; DAVID LEWIS ORMOND; MARY CAIN ORMOND; CLAUDE HUNTLEY MCALLISTER, JR.; NANCY HARDACRE MCALLISTER; KEVIN SLEAN SCULLY; MADELINE MARGURITE SCULLY; HARRIETT RIEMAN; JACK A. ALFORD; ALLAN L. ANTES; JANE L. ANTES; JOSEPH F. AUGUSTINE; CAROLYN R. AUGUSTINE; ROBERT C. BOWEN, SR.; MARY L. BOWEN; JULIAN H. BRADBERRY, JR.; MARY A. BRADBERRY; VANDER M. CLEMMONS; GLORIA R. DEGNAN; MURRAY J. DEGNAN; GEORGE DITCHEOS; BARBARA DITCHEOS; ROBERT L. DOWNING; HENRY P. DOZIER; FRANCES M. DOZIER; GARY D. GALLOWAY; JENNIE GALLOWAY; GREGORY V. GIAMMALVO; GLORIA J. GIAMMALVO; WILLIAM B. HAVERTY; EDNA B. HAVERTY; KEVIN J. HOBAN; MICHELLE HOBAN; CHARLES E. HORTON; WILLIAM S. HOWELL; MOLLY HOWELL; FLOYD P. KIRBY; LINDA N. KIRBY; CLIFF C. MABRY, JR.; MARTY MABRY; C. ROY MALLOTT; RICHARD H. MARSTON, JR.;

4

JOAN P. MARSTON; HUGH ALEXANDER MCEACHERN, JR.; MARY MCEACHERN; JOHN V. METTS; SUSAN METTS; RICHARD L. PENNINGTON; BESSIE G. PENNINGTON; KARL O. PIERCE; JUDY PIERCE; JOEL T. PINER; H. VAN REID; DOROTHY B. REID; JAMES W. ROUSE, JR.; JANIS M. ROUSE; PHILLIP A. SCARRELL; MONA R. SMALLEY; KENNETH SMITH; PAULA SMITH; EDWIN E. SPENCER; MONICA R. SPENCER; HOWARD J. TALLEY; BETSEY TALLEY; GUSTAVE J. VAN NYNATTEN; JOANNA P. VAN NYNATTEN; RICHARD L. WOODBURY; SUZANNE M. WOODBURY; BARBARA E'EMELIO; HERCHEL E. ROGERS; JULIA P. ROGERS; JOHN C. BYRNES, III; MARGARET J. BYRNES; ROBERT E. DOYLE; JAMES RAYBURN; SARAH RAYBURN; CATHERINE C. TAMISIEA; DANIEL J. FILOMENA; CATHERINE FILOMENA; KIRK A. HOWARD; BARBARA A. HOWARD, J. DON BULLARD; FAYDENE S. CORBETT,
     *Plaintiffs-Appellants,*

     v.

CITY OF WILMINGTON, NORTH CAROLINA,
     *Defendant-Appellee,*

STATE OF NORTH CAROLINA,
     *Intervenor-Appellee.*

5

Appeals from the United States District Court

for the Eastern District of North Carolina, at Wilmington.

Terrence W. Boyle, Chief District Judge.

(CA-00-182-7-3-BO)

Argued: February 28, 2002

Decided: June 10, 2002

Before WILKINS, LUTTIG, and GREGORY, Circuit Judges.

_____

Affirmed by published opinion. Judge Gregory wrote the opinion,
in which Judge Wilkins and Judge Luttig joined.

_____

### COUNSEL

**ARGUED:** Mary Margaret McEachern Nunalee, NUNALEE &
NUNALEE, L.L.P., Wilmington, North Carolina; James Edison
Eldridge, THE ELDRIDGE LAW FIRM, P.C., Wilmington, North
Carolina, for Appellants. Thomas Clyde Pollard, City Attorney for
City of Wilmington, Wilmington, North Carolina, for Appellees.

_____


_____

### OPINION

GREGORY, Circuit Judge:

The Appellants challenge the City of Wilmington's decision to
annex territory on which they reside. They assert that the annexation
violates the Equal Protection Clause of the Fourteenth Amendment,

6

the Due Process Clause of the Fourteenth Amendment, the Takings Clause of the Fifth Amendment, and the Privileges and Immunities Clause of Article IV. We hold that Wilmington's actions did not violate any of these provisions of the United States Constitution. We also hold that the district court did not err in denying the Appellants' joinder motion. Accordingly, we affirm.

## I.

The City of Wilmington is located in eastern North Carolina in New Hanover County. Wilmington's current land area encompasses approximately 54.3 square miles, with a population of approximately 90,400. On June 2, 1998, the Wilmington City Council adopted an ordinance to annex an area known as the "1998 Annexation Area." The 1998 Annexation Area consisted of approximately 9.27 square miles of land, lying between the pre-annexation eastern city limit and the Intracoastal Waterway (opposite the Masonboro Inlet), with a population of approximately 13,000 residents. The ordinance was adopted pursuant to N.C. Gen. Stat. § 160A-49 (1999), which authorizes North Carolina cities with populations in excess of 5,000 to annex contiguous territory. Section 160A-49 does not provide for a vote by either the residents of the area to be annexed or the residents of the annexing city.[1]

In addition to the General Assembly's delegation of authority to municipalities, the General Assembly has the authority to adopt local acts specifying the boundaries of municipalities, and the manner of any alteration. N.C. Gen. Stat. § 160A-21 (1999). The General Assembly has, from time to time, enacted such local acts, and subjected the local act to referenda. There are at least five municipalities where the General Assembly has adopted local acts to provide for a referendum on annexations: cities in Craven County with populations of less than 500 (Ch. 92, 1985 N.C. Sess. Laws); Holden Beach (Ch. 638, 1991 N.C. Sess. Laws); River Bend (Ch. 363, 1997 N.C. Sess. Laws); Wentworth (Ch. 322, 1997 N.C. Sess. Laws); and Bermuda

_____

[1] The General Assembly has provided for similar procedures for municipalities with populations under 5,000. N.C. Gen. Stat. §§ 160A-33 through 160A-43 (1999). These procedures also do not provide for a vote on annexation.

7

Run (Ch. 94, 1999 N.C. Sess. Laws). In Holden Beach, the residents of the municipality must approve the annexation while in the other towns, an annexation is subject to a referendum by the residents of the proposed annexation area.

Appellants Barefoot, Wrage and Fokakis (the "Plaintiff-Appellants"), and approximately 100 Interveners (the "Intervener-Appellants") (collectively the "Appellants"), reside in the 1998 Annexation Area. J.A. 21-29. The Appellants are opposed to the annexation. The first attempt to block the annexation was made in state court. All but approximately eighteen of the Appellants filed a joint petition for review in the New Hanover County Superior Court pursuant to N.C. Gen. Stat. § 160A-50 (1999). J.A. 47-54. The claims included only state law claims. The Superior Court upheld the ordinance. The North Carolina Court of Appeals affirmed, *Rogers, et al. v. City of Wilmington*, N.C. App. No. COA99-674 (New Hanover Cty. April 18, 2000), and the North Carolina Supreme Court denied discretionary review, *Rogers, et al. v. City of Wilmington*, 352 N.C. 591, 544 S.E.2d 704 (2000).

The Plaintiff-Appellants commenced this action on September 29, 2000 in the Eastern District of North Carolina alleging that the annexation violated the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, and seeking declaratory and injunctive relief. The Plaintiff-Appellants moved for and were denied a temporary restraining order and a preliminary injunction. The Plaintiff-Appellants filed an appeal of the district court's order denying their motion for a preliminary injunction. *Barefoot v. City of Wilmington*, No. 01-1185. On January 16, 2001, the Intervener-Appellants filed a complaint, alleging that the annexation violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, and the Privileges and Immunities Clause of Article IV, U.S. Const. art. IV, § 2. While the appeal in No. 01-1185 was pending, the City filed a motion to dismiss both complaints for failure to state a claim in the district court. Shortly thereafter, the Appellants filed a motion to join Walter Futch as a plaintiff and the Town of Leland as a defendant. Futch is a resident of an area annexed by the Town of Leland. The Town of Leland is approximately six miles from Wilmington, and the annexation Futch sought to challenge was unrelated to Wilmington's annexation. On

8

September 7, 2001, the district court granted the City's motion to dismiss and denied the Appellant's motion to join Walter Futch as a plaintiff and the Town of Leland as a defendant. The Appellants filed a timely appeal. *Barefoot v. City of Wilmington*, No. 01-2191. The City moved for dismissal of appeal No. 01-1185 as moot. The Appellants moved to consolidate the appeals. On October 11, 2001, we voted to defer ruling on the City's motion to dismiss, voted to grant the Appellant's motion to consolidate, ordered supplemental briefing, and rescheduled oral arguments.[2]

## II.

The court reviews a district court's dismissal under Rule 12(b)(6) *de novo. See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). We consider the evidence in the light most favorable to the nonmoving party, and we accept as true all well pleaded allegations. *Id.* The district court's denial of a joinder motion is reviewed for abuse of discretion. *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980).

## III.

Before reaching the merits of the appeal, there is a preliminary issue that requires attention. For the first time on appeal, the City argues that the federal courts lack subject matter jurisdiction under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine generally bars district courts from "sit[ting] in direct review of state court decisions." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The prohibition extends "not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court." *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 857-58 (4th Cir. 2001) (quotation marks omitted). "A federal claim is `inextricably intertwined' with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Id.* In addition, the *Rooker-Feldman* doctrine bars issues that *could* have

_____

[2] Our decision in No. 01-2191 renders No. 01-1185 moot. Accordingly, we dismiss No. 01-1185.

9

been raised in the state court proceeding. *Feldman*, 460 U.S. at 482 n. 16; *Allstate Insurance Co. v. West Virginia State Bar*, 233 F.3d 813, 819 (4th Cir. 2000); *Guess v. Board of Medical Examiners of the State of South Carolina*, 967 F.2d 998, 1003 (4th Cir. 1992). Claims by individuals not party to the state court proceedings, however, are not barred. *Gross v. Weingarten*, 217 F.3d 208, 218 n. 6 (4th Cir. 2000). Because the *Rooker-Feldman* doctrine goes to subject matter jurisdiction, it may be raised at any time. *Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997).

Part of the City's argument is easily dismissed. Three of the Plaintiffs-Appellants, and approximately fifteen of the Intervener-Appellants, were not parties to the state court proceedings. Appellee's Br. at 10-11. The *Rooker-Feldman* doctrine does not divest the court of subject matter jurisdiction as to their claims. *Gross*, 217 F.3d at 218 n. 6.

As for the Appellants that were parties in the state court proceeding, we hold that the *Rooker-Feldman* doctrine bars this suit. The Appellants admit that the prior state proceedings addressed "whether [the City] had properly complied with North Carolina's annexation statutes . . . ." Appellants' Reply Br. at 2-3. They further admit that the present action seeks a ruling that those same statutes are unconstitutional. The City contends that the Appellants had a "reasonable opportunity," *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 201 (4th Cir. 2000), to litigate the constitutional issues in state court. *Feldman*, 460 U.S. at 482 n. 16; *Allstate Insurance*, 233 F.3d at 819; *Guess*, 967 F.2d at 1003. According to the City, North Carolina state courts may consider both state and federal constitutional challenges in reviewing annexation ordinances. *See, e.g., In re Annexation Ordinance (Winston-Salem)*, 303 N.C. 220, 227, 278 S.E.2d 224 (1981) (considering and rejecting Fourteenth Amendment challenge to N.C. Gen. Stat. § 160A-45 *et seq.*); *In re Annexation Ordinance (Raleigh)*, 253 N.C. 637, 651-52, 117 S.E.2d 795 (1961) (same). The City appears to be correct, and the record does not suggest that the state court petitioners attempted to raise constitutional challenges in the state court proceedings but were prohibited from doing so. Consequently, with respect to the Appellants that were parties to the state court proceeding, the federal courts lack subject matter jurisdiction.

10

IV.

The Appellants' first argument on the merits is that the North Carolina statutory scheme violates the Equal Protection Clause. We hold that it does not. The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Generally speaking, the Equal Protection Clause prohibits unreasonable, arbitrary, and invidious classifications. Except in cases where the challenged law employs suspect classifications or significantly burdens a fundamental right, the law comports with the Equal Protection Clause if it is rationally related to a permissible government interest. *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988). The Appellants argue that a heightened standard of review is applicable in this case because North Carolina's annexation scheme significantly burdens their fundamental right to vote. *See Kramer v. Union Free School District*, 395 U.S. 621, 626-27 (1969) ("[I]f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest.").

To begin, there is no substantive constitutional right to vote on annexation. *Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907); *Berry v. Bourne*, 588 F.2d 422 (4th Cir. 1978); *Hayward v. Clay*, 573 F.2d 187 (4th Cir. 1978); *Muller v. Curran*, 889 F.2d 54 (4th Cir. 1989). So thoroughly a matter of state political concern is annexation that the Supreme Court stated early last century that annexation is "entirely within the power of the state legislature to regulate." *Hunter*, 207 U.S. 178-79. Annexation may be accomplished without any opportunity for a vote, even in the face of fierce opposition from the citizenry; the matter is within "the absolute discretion of the State." *Id.* at 178.

Later decisions, however, have qualified the state's power to some degree, subjecting annexations to some scrutiny under the Fourteenth Amendment. Where the exercise of a state's discretion in ordering its political subdivisions involves the creation of suspect classifications or infringes on fundamental rights, the state action will be upheld only if it furthers a compelling state interest. *Hayward*, 573 F.2d at 190; *Muller v. Curran*, 889 F.2d 54, 56 (4th Cir. 1989) (citing *Hayward*).

11

But this limitation on the state's discretion has not changed the consistent understanding that "[t]here is no basis for an equal protection claim when no one is granted the right to vote on the matter of annexation." *Berry*, 588 F.2d at 424. It is only when the right to vote on a proposed annexation has been granted that "the equal protection clause requires that . . . restrictions on the franchise on grounds other than age, citizenship, and residence can be tolerated only upon proof that it furthers a compelling state interest." *Hayward v. Clay*, 573 F.2d at 190; *see also Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."). In this case, no one has been given the right to vote on the annexation proposed by the City of Wilmington.

Given this state of the law, the City appropriately acknowledges and describes the real gravamen of the Appellants' equal protection claim:

> Since there is no constitutional right to vote on annexation, the Appellants' equal protection claim is based on the fact that the General Assembly of North Carolina through various local acts has allowed referenda on incorporation, consolidation or annexation in other parts of the state. The Appellants then contend that there must be a compelling state interest for denying them a right to vote on the City's annexation ordinance.

Appellee's Br. at 15.

We think this fails to state a claim under the Equal Protection Clause. There are two ways that annexation can be accomplished in North Carolina. Both are designed to operate uniformly throughout the state. Under N.C. Gen. Stat. § 160A-49, the governing board of a municipality may adopt an annexation ordinance. Under N.C. Gen. Stat. § 160A-21, the General Assembly may adopt a local act setting the boundaries of a municipality, or setting forth the manner in which the boundaries will be determined. These provisions make no classification that singles out any group of North Carolinians for discriminatory treatment regarding the right to vote on annexation. Indeed,

12

neither statute even makes reference to the right to vote.[3] The annexation scheme implements the General Assembly's legitimate determination that boundaries of municipalities (and the accompanying potential desirability of a referendum) should be analyzed by the legislature on a case-by-case basis. The mere fact that the General Assembly has previously used its authority to determine the boundaries of some municipalities by allowing a referendum—presumably when the affected residents petitioned their representatives—does not mean that any annexation thereafter accomplished without a referendum violates North Carolinians' right to the equal protection of the laws. It cannot be seriously maintained that all annexations present the precise problems that would prompt the General Assembly to mandate a referendum. Nothing in the Constitution prohibits states from wisely limiting the exercise of its powers to the needs at hand. *Katzenbach v. Morgan*, 384 U.S. 641, 657-58 (1966); *Railway Express Agency v. New York*, 336 U.S. 106, 110 (1949).

Because North Carolina's scheme does not burden a fundamental right or employ a suspect classification, annexation decisions are within "the absolute discretion of the State." *Hunter*, 207 U.S. at 178. Consequently, we do not believe that North Carolina needs to articulate *any* basis for its annexation decisions. But even if we were to undertake rational basis review, there is surely a rational basis for North Carolina's approach to annexation, which delegates the authority to annex to municipalities, but which also provides that the General Assembly may, by local act, determine the manner by which the boundaries of a municipality will be altered. The General Assembly may not have the local knowledge necessary to make a final decision on annexation in some cases where the municipality has not exercised its power. Providing for a vote in such cases would maintain local input. *See, e.g., Thompson v. Whitley*, 344 F. Supp. 480, 485 (E.D.N.C. 1972) (suggesting that General Assembly may conclude that rural, less-densely populated, areas do not have a compelling

_____

[3] The Appellants have also provided no basis for a claim that the legislation was covertly motivated by an invidiously discriminatory purpose. *See Hunter v. Underwood*, 471 U.S. 222 (1985) (holding unconstitutional a facially race-neutral state constitutional provision disenfranchising persons convicted of crimes involving moral turpitude because motivated by desire to discriminate based on race).

13

need for municipal services and that the provision of such services should be subject to a veto by the persons affected). In other cases, however, the General Assembly may find that overriding state concerns make a local referendum unnecessary or undesirable. *See, e.g.,* N.C. Const. art. VII, § 1 (limiting the authority of the General Assembly to incorporate new municipalities in the vicinity of towns and cities; establishing state interest in limiting the number of municipalities providing services in a given area). "We cannot say that that judgment [would] not [be] an allowable one." *Railway Express*, 336 U.S. at 110. Moreover, states frequently have a variety of annexation procedures; the need to experiment to find the best procedure is itself a rational basis for the North Carolina law. *Cf. Mixon v. Ohio*, 193 F.3d 389, 403 (6th Cir. 1999) (citing *Sailors v. Kent Board of Educ.*, 387 U.S. 105, 110-111 (1967) ("Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation.")).

V.

The Appellants' next contention is that the district court erred in dismissing their substantive due process claim that North Carolina's annexation scheme violates their fundamental right to vote on annexation. As stated above, there is no such right. *Hunter v. Pittsburgh*, 207 U.S. 161; *Berry v. Bourne*, 588 F.2d 422; *Hayward v. Clay*, 573 F.2d 187 (4th Cir. 1978); *Muller v. Curran*, 889 F.2d 54 (4th Cir. 1989). Accordingly, the district court appropriately dismissed this claim.[4]

VI.

The Appellants next argue that the North Carolina provisions for judicial review of annexation decisions deny them procedural due process. *See* N.C. Gen. Stat. § 160A-50 (providing limited right to judicial review of annexation decision). In order to state a procedural

_____

[4] We think *Hunter* also clearly disposes of the Appellants' claims regarding their asserted rights to "intrastate travel" and to "live and work where they will." We reject these claims, and decline to address them further.

14

due process claim, the Appellants must demonstrate that "there exists a liberty or property interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation" were constitutionally deficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Appellants contend that their "fundamental right to vote on annexation" is a protected liberty interest. As explained above, the Appellants do not have the right to vote on annexation. Consequently, the Appellants have been deprived of no cognizable liberty interest.[5]

_____

[5] We made a similar point in *Baldwin v. City of Winston Salem*, 710 F.2d 132 (4th Cir. 1983). In *Baldwin*, the appellants asserted a right to a judicial forum to challenge an annexation as arbitrary and capricious. We stated:

> Given our conclusion that the Fourteenth Amendment is not violated where, as here, the proposed annexation does not impinge on fundamental rights or create suspect classifications, there is no right under the Fourteenth Amendment to challenge annexation decisions alleged merely to be arbitrary and capricious. There is, accordingly, no federal right to have state courts hear such challenges to allegedly arbitrary and capricious annexation decisions; the availability of such review is solely a matter of state law.

*Id.* at 135 n. 3. That the Appellants are here asserting that they were deprived of a fundamental right does not give rise to a right to a judicial forum to pursue that assertion. The right to vote—to the extent it exists and an individual has been deprived of it—is certainly a protected liberty interest, and the Due Process Clause requires fair and adequate procedures if an individual is deprived of his/her liberty. But the Due Process Clause was not meant to require direct judicial review for every mere *assertion* of the deprivation of a (non-existent) liberty interest. The Appellants' suggestion to the contrary puts the cart before the horse. And at any rate, North Carolina courts do permit constitutional challenges on direct review of annexation decisions. *See ante* at 10. So it appears that most of the Appellants already have an entitlement to all the process they are seeking. The only exception would be Sharon Allen, who, because she is not a property owner, has no right to appeal the annexation decision at all. N.C. Gen. Stat. § 160A-50(a). As stated above, she has no cognizable liberty interest, *ante* at 14-15, and she has received all the process that she is due through the legislative system, *post* at 16.

15

Moreover, assuming that the Appellants were deprived of a liberty interest in voting on annexation, that deprivation was caused by the generally applicable annexation scheme enacted by the North Carolina General Assembly. When a legislature passes a law which affects a general class of persons, the political process provides all the process that is due. As Justice Holmes wrote for the Court in *Bi-Metallic Investment Company v. State Board of Equalization*, 239 U.S. 441, 445 (1915): "General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way they can be in a complex society, by their power, immediate or remote, over those who make the rule." *See also Londoner v. Denver*, 210 U.S. 373 (1908). Accordingly, we hold that the Appellants have not been deprived of due process of law.

### VII.

The Appellants next argue that the district court erred in dismissing its takings claim.[6] There are two categories of government action that are treated as *per se* takings. First, a physical invasion of an owner's property is a taking, "no matter how minute the intrusion, and no matter how weighty the public purpose behind it." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, No. 00-1167, slip op. at 18 (U.S. April 23, 2002). Second, regulations that deny all economically beneficial and productive use of land are compensable takings. *Lucas*, 505 U.S. at 1017; *Tahoe-Sierra*, slip op. at 26; *Front Royal v. Town of Front Royal, Virginia*, 135 F.3d 275, 285 (4th Cir. 1998). It is obvious that neither of these categories apply here. The Appellants complain about the *possibility* of a physical invasion (such as the widening of streets), but the possibility of a taking is not a taking. The Appellants also complain that the annexation has affected their economic interests, but it is apparent that not all productive use of their land has been denied. *Lucas*, 505 U.S. at 1017.

_____

[6] The Takings Clause of the Fifth Amendment applies to the States as well as the Federal Government. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, No. 00-1167, slip op. at 1 n.1 (U.S. April 23, 2002).

16

Finally, North Carolina's scheme is not a taking under the Supreme Court's non-categorical approach. *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978). This is simply not the type of regulation that "goes too far" and is consequently a taking under the Fifth Amendment. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). The Appellants have not been singled out to bear a burden "which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

### VIII.

The Appellants next argue that the district court erred in dismissing their claim that the annexation violated the Privileges and Immunities Clause of Article IV, § 2. As an initial matter, we observe that although the Appellants state that their claim is under Article IV, they quote the text of the Fourteenth Amendment's Privileges and Immunities Clause. Appellants' Supp. Br. at 25. Some of the Appellants' argument is also obviously directed at the Fourteenth Amendment. The two clauses are very different.

In any event, their claim fails under either. The Privileges and Immunities Clause of Article IV is "designed to ensure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). The Appellants make no argument regarding any discrimination between citizens of different States, nor can we conceive of any. Accordingly, the Appellants have failed to state a claim under Article IV.

The Privileges and Immunities Clause of the Fourteenth Amendment "protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship." *Madden v. Kentucky*, 309 U.S. 83, 90 (1940). Needless to say, there is no national citizenship right to vote on annexations. *See generally Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 73-81 (1872). Accordingly, the Appellants failed to state a claim under the Fourteenth Amendment's Privileges and Immunities Clause as well.

17

IX.

Finally, the Appellants argue that the district court abused its discretion in denying their joinder motion. The motion sought to join Walter Futch as a plaintiff and the Town of Leland as a defendant. As stated above, the Town of Leland is a separate municipal corporation from the City of Wilmington. Futch is a resident of an area recently annexed by the Town of Leland. Rule 19(a)(2)(i) provides that a person shall be joined when "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter, impair or impede the person's ability to protect that interest . . . ." This is simply not the case here. Any interest Futch has relates to the Town of Leland, not Wilmington. The only similarity between the present litigation and Futch's claim is in the issues presented. Nothing impairs Futch's ability to protect his interests, through a separate lawsuit or otherwise. Moreover, joinder in this case would have required new claims and new time for answer, discovery, and motions. By the time of the joinder motion, discovery was scheduled to be completed and dispositive motions filed in three months. Joinder would have seriously delayed the litigation. Accordingly, the district court did not abuse its discretion in denying the motion to join Futch.

X.

For the foregoing reasons, we conclude that the district court did not err in granting the City of Wilmington's motion to dismiss, or in denying the Appellants' joinder motion. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*

18