**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

---

MOZAFAR H. DAVANI,
　　　　　　*Plaintiff-Appellant,*

v.

VIRGINIA DEPARTMENT OF
TRANSPORTATION; STEVEN E. WELCH;
WILLIAM V. JOHNSON, JR.,
　　　　　　*Defendants-Appellees.*

⎱
⎰ No. 05-1432

---

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-04-1397-1)

Argued: December 1, 2005

Decided: January 17, 2006

Before NIEMEYER, WILLIAMS, and SHEDD, Circuit Judges.

---

Reversed and remanded with instructions by published opinion. Judge
Williams wrote the opinion, in which Judge Niemeyer and Judge
Shedd joined.

---

**COUNSEL**

**ARGUED:** Michael Wayne Beasley, Falls Church, Virginia, for
Appellant. Ronald Nicholas Regnery, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Rich-
mond, Virginia, for Appellees. **ON BRIEF:** Judith Williams Jagd-

mann, Attorney General of Virginia, Maureen Riley Matsen, Deputy Attorney General, Edward M. Macon, Senior Assistant Attorney General/Chief, Richmond, Virginia, for Appellees.

---

**OPINION**

WILLIAMS, Circuit Judge:

Mozafar Davani was employed by the Virginia Department of Transportation (Department) where he was supervised by Steven Welch and William Johnson. Over the course of several years, Davani received three disciplinary warnings for failure to follow Welch and Johnson's instructions. After receiving the third warning, Davani was terminated. He grieved the third warning and his termination with the Department, but a hearing officer upheld the termination. Davani appealed to the Virginia circuit court, which dismissed the appeal.

Davani subsequently filed suit in federal district court alleging that the Department, Welch, and Johnson (collectively Appellees): discriminated against him on the basis of his race (Middle Eastern), national origin (Iran), and religion (Muslim); retaliated against him for filing prior Equal Employment Opportunity (EEO) complaints; and violated state law by conspiring to injure his reputation. Appellees moved to dismiss, arguing that the district court lacked subject-matter jurisdiction over Davani's suit under the *Rooker-Feldman* doctrine and, in the alternative, that the suit was precluded by res judicata and collateral estoppel. The district court granted the motion, concluding that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine. The district court therefore did not address Appellees' preclusion arguments.

Before appellate briefing was due, the Supreme Court decided *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005), which significantly altered this circuit's interpretation of the *Rooker-Feldman* doctrine. Under our prior cases, the *Rooker-Feldman* doctrine had been interpreted broadly to provide that the loser in a state-court adjudication was barred from bringing suit in federal court alleging the same claim or a claim that could have been

brought in the state proceedings. *Exxon* teaches, however, that the *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Because Davani's suit does not challenge the state court's decision, and it instead seeks redress for an injury allegedly caused by Appellees, the *Rooker-Feldman* doctrine does not apply, and the district court's dismissal of Davani's complaint was in error.[1]

For the reasons discussed herein, we reverse the district court's dismissal under the *Rooker-Feldman* doctrine and remand for the district court to allow the parties to supplement the record so that it may give full consideration to Appellees' preclusion arguments.

## I.

The Department employed Davani as a Right-of-Way and Utilities Project Administrator. He was directly supervised by Johnson, and Welch was in the line of supervision over Davani. Davani alleges that starting in the year 2000, Johnson began to treat him differently from other employees because of his race and national origin, culminating in Johnson denying him a promotion. On December 18, 2000, Davani filed an internal grievance with the Department, and on March 16, 2001, he filed a formal EEO complaint with the Virginia Department of Human Resources Management (DHRM) alleging that Johnson's failure to promote him was discriminatory. Davani and the Department, acting through Welch, arrived at a settlement whereby Davani received, inter alia, a promotion to the position of Insurance and Property Management Practitioner.

Welch later claimed that Davani discussed the settlement with Department employees in violation of Welch's instructions, and on May 15, 2001, he gave Davani a Group II Written Notice for discussing the terms of the settlement.[2] Davani alleges that he did not imper-

---

[1]Of course, we offer no criticism of the district court, which ruled on the motion to dismiss without the benefit of the Supreme Court's decision in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005).

[2]A Group II Written Notice, like a Group I and Group III Written Notice, is a notice of disciplinary action. Group I offenses "include types

missibly discuss the settlement, and that this Written Notice was discriminatory and given in retaliation for his success on his prior EEO complaint. Davani grieved the Written Notice with the Department, but for reasons that are unclear from Davani's complaint, the Department took no action on the grievance. Davani contends that after May 15, 2001, Johnson continued to treat him differently from others based on his national origin and race, and that after September 11, 2001, Johnson's mistreatment escalated to the point of giving him bad work evaluations, making degrading comments to him, and even threatening violence against him. On November 14, 2001 and February 11, 2002, Davani filed, respectively, a second and third EEO complaint with the DHRM, complaining of discrimination and retaliation. For reasons that are not clear from Davani's complaint, the DHRM did not take action on these EEO complaints.

On February 22, 2002, Welch gave Davani a second Group II Written Notice for failing to follow Johnson's instructions by, inter alia, failing to submit a required accident report. Davani alleges that he followed the correct post-accident procedures and that the second Written Notice was also discriminatory and retaliatory. Although the Department could have terminated Davani at that time based on the second Group II Written Notice, it only suspended him for thirty days. On April 3, 2002, after his suspension, Davani filed a charge with the Equal Employment Opportunity Commission (EEOC), "provid[ing] detailed allegations of the full range of unlawful discriminatory (based on race and national origin) and retaliation (based on protected EEO activities)." (J.A. at 37.) The EEOC subsequently made a "no violation" finding on Davani's charge and issued a right-to-sue letter to him. (J.A. at 137.)

On or about April 7, 2003, Welch gave Davani a third Group II Written Notice for failing to follow Johnson's instructions, this time

---

of behavior least severe in nature but which require correction in the interest of maintaining a productive and well-managed work force." (J.A. at 94.) Group II offenses "include acts and behavior which are more severe in nature and are such that an additional Group II offense should normally warrant removal." (J.A. at 94.) Group III offenses "include acts and behavior of such a serious nature that a first occurrence should normally warrant removal." (J.A. at 94.)

for Davani's purported failure to investigate certain issues relevant to the utilities present at a project site. On April 22, 2003, the Department terminated Davani because of the three Group II Written Notices.

Davani challenged his termination by filing a grievance with the Department, arguing that the third Group II Written Notice was unjustified on the facts and that it was retaliatory. The Department refused to reinstate him, and he requested a hearing before a hearing officer in the Department of Employment Dispute Resolution. On August 4, 2003, the hearing officer held an evidentiary hearing on the grievance. Although the record is unclear on this point, it appears that Davani attempted to challenge his first two Written Notices, but the hearing officer limited the issue before him to the propriety of the third Written Notice. On August 13, 2003, the hearing officer issued a written decision reducing Davani's third Group II Written Notice to a Group I notice because Davani did not fail to follow his supervisor's instructions but simply did a poor job. Despite this fact, the ALJ nevertheless rejected Davani's challenge to his termination because he still had two Group II Notices, which were sufficient to sustain Davani's termination. The hearing officer also stated: "[Davani] contends the [Department's] disciplinary action raises from [sic] improper retaliation against him. No credible evidence was presented suggesting the [Department] disciplined [him] for any impermissible reason." (J.A. at 95.)

Davani filed an appeal in the circuit court of Fairfax County. On October 10, 2003, that court dismissed the appeal, holding that the hearing officer's ruling was not "contradictory to law" pursuant to Va. Code Ann. § 2.2-3006 (Bender 2005). (J.A. at 98.) Davani did not further appeal the circuit court's decision.

On November 18, 2004, Davani filed a civil action in the district court alleging six causes of action: (1) against the Department for discrimination on the basis of race, national origin and religion in violation of federal law; (2) against the Department for retaliation in violation of federal law; (3) against Welch for retaliation in violation of federal law; (4) against Johnson for retaliation in violation of federal law; (5) against Appellees for conspiracy to retaliate in violation of federal law, and (6) against Welch and Johnson for conspiracy to

injure his reputation and professional standing in violation of Virginia law.

On January 14, 2005, Appellees filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that the district court lacked subject-matter jurisdiction by virtue of the *Rooker-Feldman* doctrine, and under Fed. R. Civ. P. 12(b)(6), arguing that Davani's complaint failed to state a claim on which relief could be granted by virtue of res judicata and collateral estoppel preclusion doctrines. The district court granted the Rule 12(b)(1) motion, concluding that it lacked jurisdiction under the *Rooker-Feldman* doctrine, and it therefore did not address Appellees' Rule 12(b)(6) res judicata and collateral estoppel arguments.

Davani appeals, arguing that the *Rooker-Feldman* doctrine does not extend to his claims. We review de novo the district court's grant of Appellees' motion to dismiss. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

## II.

Davani argues that *Exxon* makes clear that the *Rooker-Feldman* doctrine is inapplicable here because he does not challenge the state circuit court's decision itself, but rather seeks redress for Appellees alleged discrimination and retaliation. Appellees argue that the district court correctly dismissed Davani's case under the *Rooker-Feldman* doctrine because, even after *Exxon*, Davani's federal claims are "inextricably intertwined" with the circuit court's decision.

The *Rooker-Feldman* doctrine is the namesake of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the plaintiffs brought suit in federal district court seeking a declaration that a state-court judgment against them was "null and void" because, they alleged, it was in violation of the Constitution. *Id.* at 414-15. The Supreme Court concluded that the district court lacked subject-matter jurisdiction over the claim because "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify [a state-court] judgment for errors of [Constitutional] character." *Id.* at 416.

In *Feldman*, the plaintiffs brought suit in federal district court against the District of Columbia Court of Appeals[3] alleging (1) the District of Columbia court's rule prohibiting those who had not graduated from law school from becoming members of the bar violated federal constitutional and statutory law and (2) the District of Columbia court's denial of their petitions for a waiver from the bar-admission rule also violated federal constitutional and statutory law. *Id.* at 468. The Supreme Court held that the district court had subject-matter jurisdiction to consider the plaintiffs' first claim because the facial challenge to the rule was like any other challenge of any legislative enactment. *Id.* at 486. The second claim, however, was different. There, in ruling on the plaintiffs' application for a waiver, the District of Columbia court had acted in a judicial, rather than a legislative, capacity. *Id.* at 480-82. The plaintiffs' second claim challenged that judicial determination and therefore effectively sought appellate review of the District of Columbia court's ruling in the district court. *Id.* Because only the Supreme Court has appellate jurisdiction to review a state court's order, *see* 28 U.S.C.A. § 1257(a) (West 1993),[4] the Supreme Court held that the district court lacked subject-matter jurisdiction to hear the plaintiffs' second claim. *Id.* at 482. In a cryptic footnote, the Supreme Court rejected the argument that the district court would have had subject-matter jurisdiction over the plaintiffs' second claim if the plaintiffs had failed to make their federal-law

---

[3]The District of Columbia Court of Appeals is the highest local court in the District of Columbia. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 464 (1983).

[4]The full text of 28 U.S.C.A. § 1257(a) provides:

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

The District of Columbia's court system is treated the same as the court systems of every state. *See* 28 U.S.C.A. § 1257(b).

arguments to the state court, instead holding that "[i]f the constitutional claims presented to [the district court] are *inextricably inter-*twined with the state court's [ruling] in a judicial proceeding . . ., then the district court is in essence being called upon to review the state court decision." *Id.* at 482 n.16 (emphasis added).

Our cases have given the *Rooker-Feldman* doctrine an expansive reading. In *Barefoot v. City of Wilmington*, 306 F.3d 113 (4th Cir. 2002), for example, the city enacted an ordinance that allowed it to annex the plaintiffs' land. *Id.* at 118. The plaintiffs opposed the annexation, and filed suit in state court alleging that the ordinance violated state law. *Id.* at 119. The state court disagreed and upheld the ordinance. *Id.* The plaintiffs then filed suit in the federal district court alleging that the ordinance violated several federal constitutional provisions. *Id.* The district court denied the plaintiffs' request for a temporary restraining order and an injunction, and the plaintiffs appealed. *Id.*

On appeal, we held that the *Rooker-Feldman* doctrine barred the suit, stating:

> The *Rooker-Feldman* doctrine generally bars district courts from sitting in direct review of state court decisions. The prohibition extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court. A federal claim is inextricably intertwined with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.

*Id.* at 120 (internal quotation marks and citations omitted). Because the plaintiffs had the opportunity to raise their constitutional claims before the state courts, we held that their federal suit was inextricably intertwined with the state proceedings. *Id.* at 121.

*Barefoot* and numerous similar cases both from within and outside of our circuit represent a broad interpretation of the *Rooker-Feldman* doctrine.[5] The plaintiffs in *Rooker* and *Feldman* sought redress for an

---

[5]Among the other cases cited by the parties in this case that gave the *Rooker-Feldman* doctrine a broad interpretation are *Shooting Point v.*

injury allegedly caused by the *state-court decision* itself — in *Rooker*, the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman*, the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot*, by contrast, we extended the *Rooker-Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's actions*. What is more, this expansive view of the *Rooker-Feldman* doctrine carried with it implications for *Feldman*'s "inextricably intertwined" language. To wit, by shifting the focus from an examination of whether the plaintiff challenges the state-court decision itself to whether the plaintiff challenges the defendant's actions, our interpretation of the *Rooker-Feldman* doctrine became, in essence, a jurisdictional doctrine of res judicata: state-court losers became precluded from raising claims in federal district court that they had either already raised before the state court or that were so "inextricably intertwined" with the claims they presented to the state court that the federal claims could have been raised in the state proceedings.

Last term, the Supreme Court reined in the expansive interpretation of the *Rooker-Feldman* doctrine exemplified in cases such as *Barefoot*. In *Exxon*, Exxon and Saudi had formed a joint venture to produce polyethylene in Saudi Arabia. *Id.* at 1525. Exxon contended that Saudi had overcharged the venture for certain licenses. *Id.* Saudi sued Exxon in state court, seeking a declaratory judgment that the charges were proper. *Id.* Exxon then sued in federal court for damages and asserted as counterclaims in the state action the same claims it had made in the federal action. *Id.* Saudi moved to dismiss the federal court action. *Id.* The district court denied the motion and Saudi took an interlocutory appeal. *Id.* While the federal appeal was pending, the state case went to trial, and the jury awarded Exxon significant damages. *Id.* On appeal of the federal court's denial of the motion to dismiss, the Third Circuit held that the state court's entry of judgment

*Cumming*, 368 F.3d 379 (4th Cir. 2004), *Friedman's, Inc. v. Dunlap*, 290 F.3d 191 (4th Cir. 2002), and *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194 (4th Cir. 2000). *See also Leonard v. Suthard*, 927 F.2d 168 (4th Cir. 1991).

divested the federal court of subject-matter jurisdiction over the suit under the *Rooker-Feldman* doctrine. *Id.* at 1526.

The Supreme Court reversed, holding that application of the *Rooker-Feldman* doctrine was inappropriate because *Exxon* had merely filed parallel litigation against Saudi but did not seek redress from an injury that the state-court order itself caused:

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. . . . [In cases of parallel litigation, d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. . . .
>
> *[Moreover, the Rooker-Feldman doctrine does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.*

*Id.* at 1521-22, 1527 (internal quotation marks omitted and emphasis added).

This language undercuts the broad interpretation of the *Rooker-Feldman* doctrine we applied in cases like *Barefoot*. Whereas in *Barefoot* we examined whether the state-court loser who files suit in federal court is attempting to litigate claims he either litigated or could have litigated before the state court, *Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself.[6]

--------

[6]In *Exxon*, of course, Exxon could not have been complaining that the state-court decision itself caused it injury because at the time Exxon filed

If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply. *See, e.g.*, *Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005) (holding, post-*Exxon*, that the *Rooker-Feldman* doctrine did not apply because "[the plaintiff's] claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights [by the defendant]"). If, on the other hand, he is challenging the state-court decision, the *Rooker-Feldman* doctrine applies. It is important to note that the *Rooker-Feldman* doctrine applies in this second situation even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court. A claim seeking redress for an injury caused by the state-court decision itself — even if the basis of the claim was not asserted to the state court — asks the federal district court to conduct an appellate review of the state-court decision. *Exxon* clarifies, however, that § 1257(a) provides that only the Supreme Court may review state-court decisions. Under *Exxon*, then, *Feldman*'s "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision, and is therefore outside of the jurisdiction of the federal district court. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86-87 (2d Cir. 2005) ("[D]escribing a federal claim as 'inextricably intertwined' with a state-court judgment only states a conclusion. *Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment."); *cf. Washington*, 407 F.3d at 280 (concluding that plaintiff's federal suit was not "inextricably intertwined" with the state-court decision because it sought redress for the defendant's violation of his rights, not the state-court decision.)

---

its federal suit, the state court had not even reached a final judgment in the parallel state case. The rule announced in *Exxon* — that the *Rooker-Feldman* doctrine applies only if the state-court loser files a federal suit seeking redress for an injury allegedly caused by the state-court decision itself — extends beyond the context of parallel litigation.

Applying *Exxon* here, we reject Appellees' argument that Davani's federal suit is "inextricably intertwined" with the state proceedings. Davani lost before the Virginia circuit court and then filed a suit in the federal district court raising similar claims to those he presented in the state proceedings.[7] In his federal complaint, Davani did not allege that the state decision caused him injury; rather, he alleged that Appellees discriminated against him in violation of federal and state law. Davani's federal claims do not challenge the state decision and are therefore "independent" from that decision. *Exxon*, 125 S. Ct. at 1527. As the Second Circuit put it well in *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005):

> Suppose a plaintiff sues his employer in state court for violating . . . anti-discrimination law and . . . loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 87-88. We therefore conclude that Davani's claims were properly before the district court under *Exxon*'s interpretation of the *Rooker-Feldman* doctrine.

### III.

Appellees contend that even if the *Rooker-Feldman* doctrine does not bar this suit under Rule 12(b)(1), the suit nevertheless must be dismissed under Rule 12(b)(6) because the doctrines of res judicata and collateral estoppel preclude it. While the district court's failure to address these legal arguments below does not alone prevent us from addressing them on appeal, *see Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000) (holding that dismissal on res judicata grounds is

---

[7]We assume, without deciding, that the state circuit court's dismissal of the hearing officer's decision was a "judicial" proceeding for purposes of the *Rooker-Feldman* doctrine.

proper under Rule 12(b)(6) unless a disputed issue of material fact exists); *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (noting that a Rule 12(b)(6) motion "is intended to test the legal adequacy of the complaint"), prudence counsels that, because of the undeveloped state of the record, we refrain from doing so at this time.

Among the factors that must be considered in determining the preclusive sweep of Davani's state proceedings are the claims Davani actually made and the issues that he actually presented in those proceedings. *See, e.g.*, *Davis v. Marshall Homes, Inc.*, 576 S.E.2d 504, 506-507 (Va. 2003) (holding that one of the elements of Virginia res judicata law, "identity of the cause of action," requires that the "same evidence [be] necessary to prove [the claims in the first and second suit]" (internal quotation marks omitted)); *Harnett v. Billman*, 800 F.2d 1308, 1312 n.1 (4th Cir. 1986) (noting that the "identity of the cause of action" test under federal law requires that the claims "aris[e] out of the same transaction or series of connected transactions"); *Whitley v. Virginia*, 538 S.E.2d 296, 299 (Va. 2000) (noting that one of the elements of Virginia collateral estoppel law is that the factual issue sought to be precluded must have been "actually litigated" in the prior proceeding); *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (announcing a similar element under federal law).[8] Neither the hearing officer's written decision nor the circuit court's dismissal of Davani's appeal, however, indicate precisely what claims Davani made in his grievance or, similarly, what issues were actually decided. For example, it is unclear from the record whether the hearing officer even allowed Davani to challenge his first two Group II Written Notices, which were the grounds on which the hearing officer affirmed Davani's termination. If Davani was unable to challenge those prior Written Notices, this fact would be relevant to the resolution of whether Davani's state proceedings and federal suit share an "identity of the cause of action," *Davis*, 576 S.E.2d at 506, and whether the factual issue was "actually litigated," *Whitley*, 538 S.E.2d at 299. To consider Appellees' arguments on the record before us, especially considering that Davani represented at oral argument that a tape recording of the grievance hearing exists, would be

---

[8]We need not decide at this juncture whether Virginia or federal law determines the preclusive effect of the state proceedings in this case.

premature. We therefore conclude that the proper course of action is to remand to the district court to allow the parties to supplement the record with material relevant to Appellees' res judicata and collateral estoppel arguments.

## IV.

For the foregoing reasons, we reverse the district court's Rule 12(b)(1) dismissal under the *Rooker-Feldman* doctrine and remand for the district court to allow the parties to supplement the record so that it may give full consideration to Appellees' Rule 12(b)(6) claim and issue preclusion arguments.

*REVERSED AND REMANDED WITH INSTRUCTIONS*